United States District Court
Southern District of Texas

**ENTERED**

July 03, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES VAN WINKLE, §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. H-17-01875
§
HOUCON PARTNERS, L.P. §
a/k/a SUNPARK CENTER, §
§
    Defendant. §

### <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] is Defendant's Motion to Dismiss (Doc. 12). The court has considered the motion, Plaintiff's response, Defendant's reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the motion be **DENIED**.

### I.  Case Background

Plaintiff filed this action on June 20, 2017, against Houcon Partners, L.P., ("Defendant")[2] for alleged violations of Title III of the Americans with Disabilities Act[3] ("ADA") and the Americans with Disabilities Act Accessibility Guidelines[4] ("ADAAG").[5]

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 4, Ord. Dated June 21, 2017.

[2]    Plaintiff originally included Yangchen, Inc. d/b/a China Delight and Taqueria Jalisco in the complaint but filed a Notice of Nonsuit as to those parties on July 24, 2017. <u>See</u> Doc. 7, Ord. Dated July 24, 2017.

[3]    <u>See</u> 42 U.S.C. §§ 12101-12205a.

[4]    <u>See</u> 28 C.F.R. § 36.

[5]    <u>See</u> Doc. 1, Pl.'s Orig. Compl.

Plaintiff alleged that he is a qualified individual under the ADA because he requires the use of a wheelchair to ambulate.[6] Plaintiff acts as a "tester" for the purpose of "discovering . . . discrimination against the disabled in public accommodations" by personally visiting the premises and engaging all barriers to access.[7]  Upon encountering alleged violations of the ADA, Plaintiff's practice is to bring suit against the operating, owning, or leasing party of the establishment with the stated intent to later return to the premises to verify that compliance with the ADA has been achieved.[8]  According to Defendant, Plaintiff had filed eighty-two similar complaints from August 21, 2014, to August 25, 2017, in this district, the Eastern District of Texas, the Southern District of New York, and the Northern District of New York.[9]

On or about March 29, 2017, Plaintiff visited Defendant's shopping center ("Subject Premises") and allegedly encountered architectural barriers that were discriminatory in nature.[10] Plaintiff alleged that the Subject Premises is a "place of public accommodation" that has been altered since January 26, 1992, and,

---

[6]    See id. p. 24.

[7]    Id. p. 4.

[8]    See id.

[9]    See Doc. 12, Def.'s Mot. to Dismiss pp. 1-2;  Doc. 12-1, Ex. 1 to Def.'s Mot. to Dismiss, List of Pl.'s Fed. Disability Advocacy Lawsuits.

[10]    See Doc. 1, Pl.'s Orig. Compl. p. 3.

2

therefore, the architectural barriers he encountered at the premises are violations of Title III of the ADA.[11]  In particular, Plaintiff alleged noncompliance with the ADA and ADAAG requirements regarding: (1) the width of the access aisles (pedestrian space between parking spaces); (2) the distance from the accessible parking spaces to an accessible entrance; (3) the number of van accessible parking spaces; (4) the lack of signs designating accessible parking spaces as reserved for individuals with disabilities; (5) and the slope of the parking lot containing the accessible parking spaces and aisles.[12]  Plaintiff asserted that, as a result of the Title III violations, he was discriminated against in "the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations" of the Subject Premises.[13]

Plaintiff further alleged that he intended to return to the property to avail himself of the available goods and services but that attempts to return would be futile.[14]  He claimed that he had been deterred from returning to the Subject Premises and that he had "suffered, and [would] continue to suffer, frustration and humiliation" until Defendant is compelled to bring the Subject

---

[11]     See Doc. 1, Pl.'s Orig. Compl. pp. 2-3.

[12]     See id. p. 6.

[13]     Id. p. 11.

[14]     See id. p. 10.

3

Premises into compliance with the ADA.[15]  As such, Plaintiff sought injunctive relief in the form of a court order requiring Defendant to close the Subject Premises until modifications could be made to bring it into compliance with the ADA and ADAAG as well as awards of reasonable attorney's fees and litigation costs incurred in this action.[16]

On October 4, 2017, Defendant filed the pending motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6).[17]  Defendant argues that: (1) the court lacks subject matter jurisdiction because Plaintiff does not have standing under Article III of the Constitution; and (2) Plaintiff fails to state a claim upon which relief can be granted.[18]  Defendant contends that Plaintiff did not satisfy the requirements for standing because Plaintiff did not and cannot demonstrate that he suffered an injury-in-fact, that he had a concrete plan to return to the premises, or that he was deterred from returning to the premises.[19] Moreover, Defendant asserts that Plaintiff's status as a "tester" is further indication that Plaintiff is unable to achieve

---

[15]    Id. p. 11.

[16]    See id.

[17]    See Doc. 12, Def.'s Mot. to Dismiss.

[18]    Id. p. 2.

[19]    See id. pp. 3-4; 11-19.

constitutional standing.[20]   Finally, Defendant argues that Plaintiff's claim should be dismissed because the complaint did not contain sufficient factual allegations to establish which specific barriers at the Subject Premises violated Title III of the ADA and therefore failed to provide the Defendant with proper notice of the claim against it.[21]

Plaintiff responded to the motion to dismiss on November 10, 2017.[22]   While Plaintiff does not address any of the factual deficiencies Defendant raised in its motion, he does defend his position as a "tester," citing a Supreme Court case instructing courts to take a broad view of constitutional standing in civil rights cases, especially where private enforcement suits are the primary method of obtaining compliance with the Act.[23]   On January 18, 2018, Defendant filed a reply reasserting its same arguments.[24] Defendant requests that either the case be dismissed or that Plaintiff be ordered to replead with sufficient factual allegations.[25]

## II.  Substantive Legal Standard

---

[20]   See id. pp. 10-11.

[21]   See id. pp. 4-5; 19-20.

[22]   See Doc. 16, Pl.'s Resp. To Def.'s Mot. To Dismiss.

[23]   See id. p. 3-4.

[24]   See Doc. 20, Def.'s Reply.

[25]   See id. p. 4.

The ADA is a civil rights law that was enacted by Congress to prohibit discrimination based on disability.  Title III of the ADA provides the general rule that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Under the ADA, an individual has a "disability" if he has a physical impairment that "substantially limits one or more major life activities."  42 U.S.C. § 12102(1).  Under Title III of the ADA, discrimination includes the failure to remove architectural barriers to or within an existing public accommodation.  42 U.S.C. § 12182(b)(2)(A)(iv).  New construction at a place of public accommodation that occurs after the ADA's effective date must be in compliance with the ADAAG.  28 C.F.R. § 36.402.

The remedies set forth in Title III are provided to any "person who is being subjected to discrimination on the basis of disability."  42 U.S.C. § 12188(a).  In the case of architectural barriers, as set out in 42 U.S.C. § 12182, the appropriate remedy is injunctive relief, which shall include "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by [Title III]."  Title III also delegates the power of enforcement to the

U.S. Attorney General.   42 U.S.C. § 12188(b).   However, "[a]s a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, most ADA suits are brought by a small number of private plaintiffs." Betancourt v. Federated Dep't Stores, 732 F. Supp. 2d 693, 701 (W.D. Tex. 2010)(quoting Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9ᵗʰ Cir. 2007)).

### III. Dismissal Standard

Dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1), 12(h)(3). A district court's jurisdiction is limited to actual cases or controversies.   Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).   In order to meet the case-or-controversy requirement of the constitution, a plaintiff must demonstrate that he has constitutional standing.   See id. at 560-61; see also McCall v. Dretke, 390 F.3d 358, 361 (5ᵗʰ Cir. 2004)(explaining that standing is an essential component of federal subject matter jurisdiction).

To plead constitutional standing, a plaintiff must satisfy three elements: existence of an injury-in-fact; causation; and probable redressability.   See Lujan, 504 U.S. at 560-61.   First, a plaintiff must have sustained an injury in fact, which is defined as "an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."   Id.   (internal quotation marks

7

omitted)(quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

Particularized means "that the injury must affect the plaintiff in

a personal and individual way." Id. at 560 n.1.   Second, a

plaintiff must show a causal connection between the injury and

defendant's actions.   See id. at 560.   A plaintiff demonstrates

causation by showing that the injury is "fairly . . . trace[able]

to the challenged action of the defendant, and not . . . th[e]

result [of] the independent action of some third party not before

the court." Id.   (quoting Simon v. E. Ky. Welfare Rights Org., 426

U.S. 26, 41-42 (1976)).   "Third, it must be likely, as opposed to

merely speculative, that the injury will be redressed by a

favorable   decision." Id.   (internal   quotation   marks

omitted)(quoting Simon, 426 U.S. at 38, 43).

A plaintiff must demonstrate standing for each type of relief

sought.   Therefore, a Title III plaintiff must satisfy the standing

requirements of Article III of the Constitution for injunctive

relief.   The Supreme Court held in Lyons, that a plaintiff seeking

injunctive relief based on an alleged past wrong must show that

there is reason to believe that he would directly benefit from the

equitable relief sought.   City of Los Angeles v. Lyons, 461 U.S.

95, 111 (1983).   "Past exposure to illegal conduct does not itself

show a present case or controversy regarding injunctive relief . .

. if unaccompanied by continuing, present adverse effect." Id. at

102 (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1983)).   In

8

other words, a plaintiff alleging a past wrong must show that there is a "real or immediate threat that he will be wronged again" in order to have standing for injunctive relief.  <u>Plumley v. Landmark Chevrolet, Inc.</u>, 122 F.3d 308, 312 (5th Cir. 1997).

Pursuant to Rule 12(b)(6), dismissal of an action is allowed whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>See</u> <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)).  A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Aschroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully."  <u>Iqbal</u>, 556

U.S. at 678.

## IV. Analysis

Defendant's motion raises two potential bases for dismissal of the entire case: lack of subject matter jurisdiction and failure to state a claim. The court is obligated to address the challenges to subject matter jurisdiction before considering whether Plaintiff stated a claim entitling him to relief. See <u>Ramming v. United States</u>, 281 F. 3d 158, 161 (5th Cir. 2001).

### A. <u>Subject Matter Jurisdiction</u>

Defendant's motion raises two arguments challenging subject matter jurisdiction.  The first is that Plaintiff is not entitled to injunctive relief because of his status as a "tester" and his history of litigation.  The second argument is that Plaintiff lacks standing because he failed to demonstrate, and is unable to demonstrate, that he suffered an injury-in-fact and that the injury was concrete and imminent.

### 1.  The Impact of "Tester" Status on Standing

Defendant argues that Plaintiff's "bare-bones complaint[] fails to establish Article III standing and [Plaintiff] fails to plead sufficient facts to state a cognizable claim against Defendant."[26]   Defendant contends that Plaintiff's status as a

---

[26]     Doc. 20, Def.'s Reply. p. 2.

"tester" exacerbates the deficiencies in the complaint.  Defendant cites a recent ADA lawsuit brought by another proclaimed ADA "tester" as support for his contention.[27]  In Deutsch v. Travis Cty. Shoe Hosp., Inc., No. A-15-CV-1198 LY, 2016 WL 5317199, **1-2 (W.D. Tex. Sept. 21, 2016)(unpublished) the plaintiff, a wheelchair-bound, serial ADA litigant, brought nearly 400 lawsuits against small businesses in Austin, Texas.  The plaintiff alleged that he went to the Austin Shoe Hospital to have his shoes resoled but never entered the premises because another vehicle parked next to him and he was unable to exit his vehicle. See id. at *5.  He brought suit against the owner of the business, Travis County Shoe Hospital, for ADA violations regarding the number of van accessible parking spaces and height of the primary door threshold ramps and landings.  See id. at **1-2.  The court set a evidentiary hearing regarding the standing issues in that case as well as three of the plaintiff's other pending ADA lawsuits.  See id. at *2.

At the hearing, the plaintiff testified that he had no "specific" intention of ever returning to defendant's business again and that he had never returned to any of the other businesses he had previously sued.  Id. at **5, 8.  He further testified that his attorney prepared a list of businesses for him to visit in order to inspect their ADA compliance.  Id. at **6-7.  The court

---

[27]    See Doc. 12, Def.'s Mot. to Dismiss p. 10 (citing Deutsch v. Abijaoude, No. A-15-CV-975 LY, 2017 WL 913813, at *1 (W.D. Tex. Mar. 7, 2017); Deutsch v. Travis Cty. Shoe Hosp., Inc., No. A-15-CV-1198 LY, 2017 WL 3648477, at *1 (W.D. Tex. Sept. 21, 2016)(unpublished))

held that "[f]rom this evidence, it appears that . . . the primary—if not sole—reason Deutsch visited the defendant's businesses is that he was directed there by his attorney." Id. at *7.  The court found the plaintiff had "little or no knowledge of the entities he had sued, or why he had allegedly visited them" and noted that his demeanor while testifying was "in many instances flippant, and [he] acted as if the proceeding was a game." Id. at *8.  Additionally, the plaintiff's testimony at the hearing was inconsistent with his sworn affidavits and the evidence in the records of several of the four lawsuits. Id. at *6.

The U.S. District Court for the Western District of Texas held, and the Fifth Circuit affirmed, that "while there is no doubt that a 'tester' plaintiff can have standing under the ADA, [this plaintiff] is far from being a 'tester.'" Id. at *9; see also Deutsch v. Travis Cty. Shoe Hosp., Inc., 721 F. App'x 336 (5th Cir. 2018)(unpublished).  In coming to that conclusion, the court considered, in addition the aforementioned facts, the fact that the plaintiff had filed 385 ADA lawsuits in 306 days (averaging 38.3 lawsuits per month), sought statutory damages of at least $300 per violation, did not provide notice or opportunity to cure before the suits were filed, and made no attempt to get out of his vehicle at several locations, simply viewing the premises from his car.  Id. at *9.  The court concluded that to assign standing in cases where "randomly selected businesses with which [the plaintiff] has had

little or no prior relationship" are targeted would "stretch the notion of standing past the breaking point." Id.  Therefore, the court held that the plaintiff had "failed to demonstrate he had suffered an actual or imminent injury . . . or that he ha[d] concrete plans to patronize the businesses in the future."  Id. (internal quotation marks omitted).

Unlike the plaintiff in Deutsch, Plaintiff here: (1) filed only 82 ADA lawsuits over the course of three years (averaging 2.3 lawsuits a month); (2) alleged in his complaint that he had an intent to return to the Subject Premises; (3) sought only injunctive relief, not monetary damages; and (4) parked his vehicle and entered stores within the Subject Premises.  There are no allegations that Plaintiff conspired to visit a predetermined list of target business with the "sole intent . . . to collect as much money as possible from the defendants, without ever setting foot in their premises."  Id. at *25.  Furthermore, Plaintiff alleged in his complaint that his desire to have access to the Defendant's public accommodation was "completely independent" from his role as a "tester."[28]  Although notice and opportunity to cure were factors considered in Deutsch, the parties here do not make an issue of those concerns.  As such, the holdings in the Deutsch cases do not support a finding that Plaintiff cannot establish standing because he identifies as a "tester."

---

[28]    Doc. 1, Pl.'s Orig. Compl. p. 4.

## 2.   The Intent-to-Return and Deterrent-Effect Approaches

With regard to the constitutional standing of Plaintiff's claim, Defendant argues that this court lacks subject matter jurisdiction over Plaintiff's claim because: (1) Plaintiff did not suffer an injury-in-fact; (2) Plaintiff did not sufficiently plead an intent to return to the Subject Premises; and (3) Plaintiff did not adequately plead how he was deterred from visiting the Subject Premises.

First, Defendant argues that Plaintiff did not suffer an injury-in-fact because he did not plead any connection between the alleged Title III violations and his disability and therefore did not specify how the barriers affected him.  Defendant relies on a Ninth Circuit case and a district court case out of Nevada to support his argument.[29]  However, neither case is binding in this jurisdiction, and, more importantly, both are distinguishable from the case at hand.  See Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939 (9th Cir. 2011); Allison v. Spring Mt. Las Vegas, LLC, No. 2:15-CV-2337 JCM (PAL), 2016 WL 4474126, at *1 (D. Nev. Aug. 23, 2016)(unpublished).

In Allison, the plaintiff was disabled under the ADA and required a wheelchair for mobility. In his complaint, he alleged that he was unable to access the defendant's public accommodation

---

[29]     See Doc. 12, Def.'s Mot. to Dismiss pp. 14-16 (citing Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939 (9th Cir. 2011); Allison v. Spring Mt. Las Vegas, LLC, No. 2:15-CV-2337 JCM (PAL), 2016 WL 4474126, at *1 (D. Nev. Aug. 23, 2016)(unpublished)).

due to "the physical barriers" and "ADA violations." Id. However, the court held that he had failed to identify "what those barriers were and how [they] affected him so as to deny [him] the 'full and equal' access that would satisfy the injury in fact requirement." Id. at *3.

Similarly, the plaintiff in Chapman was also wheelchair bound and disabled under the ADA. Chapman, 631 F.3d at 943. As in Allison, the court in Chapman held that the plaintiff lacked constitutional standing because "he never allege[d] what [the architectural barriers he encountered] were and how his disability was affected by them." Id. at 954. Rather, he attached an "Accessibility Survey" to his complaint which "simply identifie[d] alleged ADA . . . violations without connecting the alleged violations to [his] disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the [s]tore." Id. Importantly, the Accessibility Survey was completed in part by the plaintiff and in part by his expert, and it did not indicate which ADA violations the plaintiff himself suffered due to his disability. Id. at 943.

Although an ADA plaintiff need only encounter one architectural barrier in order to establish standing for "all barriers in that public accommodation," the plaintiff must still identify which architectural barriers "deprived him of the same full and equal access that a person who is not [disabled] would

15

enjoy when shopping" and may only bring suit for those violations that are "related to his or her specific disability." Id. at 959-60 (citing Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1043 (9th Cir. 2008)). As such, these cases indicate that a plaintiff must make factual allegations indicating *which* barriers he personally encountered and *how*, as a result of those barriers, he was discriminated against on the basis of his own specific disability.

However, unlike the plaintiffs in Allison and Chapman, Plaintiff indicated which architectural barriers deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy; he alleged that he had difficulty exiting his vehicle because the access aisle was less than the required width and both the designated accessible parking spaces and their associated access aisles were located on an excessive slope. Further, Plaintiff indicated that he had difficulty accessing the facility because the designated accessible parking spaces were located too far from an accessible route to the facility. His factual allegations established that he personally visited the Subject Premises and had "difficulty exiting the vehicle, . . . accessing the facility, . . . and [traversing] the path of travel." He further alleged that he was unable to access the public accommodation because of the discriminatory barriers and that he "ha[d] suffered and continue[d] to suffer[] frustration and humiliation as a result of the discriminatory conditions present at

16

the Subject Premises."

As such, Plaintiff did indicate in his complaint which barriers he encountered and how the barriers caused discrimination. Therefore, Plaintiff established the very connection between the injury he suffered (discrimination) and the ADA violations that was found missing by the courts in <u>Allison</u> and <u>Chapman</u>.

Defendant next argues that Plaintiff lacks standing because he both failed to sufficiently plead an intent to return to the Subject Premises and failed to demonstrate that he was deterred from returning to the Subject Premises. However, Defendant is mistaken in its contention that both a detailed intent to return *and* a deterrent effect must be proven to establish constitutional standing. <u>See</u> <u>Gilkerson</u>, 1 F. Supp. 3d 570, 583 (S.D. Tex. 2014).

In <u>Lujan</u> the Supreme Court held that whenever a plaintiff seeks injunctive relief, he must establish that his injury is "imminent" by either demonstrating that he intended to return to the property in dispute or that he was deterred from returning because of the existing barriers. <u>See</u> <u>Lujan</u>, 504 U.S. at 563-64 (discussing this requirement in the context of claims brought under the Endangered Species Act). The intent-to-return approach and the deterrent-effect approach are two alternative methods of establishing an imminent threat of harm. See id. at 564; see also Betancourt, 732 F. Supp. at 703-10. Both the intent-to-return approach and the deterrent-effect approach have been used by

17

district courts within the Fifth Circuit.  See Betancourt, 732 F. Supp. at 704.

The intent-to-return approach holds that a plaintiff must establish that he has an intent to return to the defendant's property in order to satisfy the standing requirement.  Id.  Some courts have required that the plaintiff allege some "concrete, particularized, and plausible plan to return to the out-of-compliance public accommodation that discriminated against" him in order to establish standing.  Gilkerson, 1 F. Supp. 3d at 581; see also Lujan, 504 U.S. at 563-64 (holding that some description of "concrete plans" to return is necessary to establish an imminent injury).  This requirement cannot be met with "someday intentions—without . . . any specification of when the some day will be." Lujan, 504 U.S. at 564.  Typically, courts following the intent-to-return approach evaluate "whether future injury is probable by determining whether the plaintiff is likely to return to the defendant's business."  Gilkerson, 1 F. Supp. 3d at 581.

Other district courts in the Fifth Circuit, however, have rejected the intent-to-return approach and instead applied the deterrent-effect approach.  See, e.g., Betancourt, 735 F. Supp. 2d at 599.  This approach holds that an individual suffers a cognizable injury sufficient to confer standing if he is deterred from visiting a public accommodation because it is not in compliance with the law.  Gilkerson, 1 F. Supp. 3d at 583.  This

18

approach is grounded in the language of the ADA, which dictates that a disabled individual need not "engage in a futile gesture if such person has actual notice that a person or organization does not intend to comply" with the statute.  Id. (quoting 42 U.S. Code § 12188(a)(1)).

This approach is gaining support, having been adopted by the First, Second, Eighth, and Ninth Circuits.  See, e.g., Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60 (1st Cir. 2005)(stating that "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA" and "who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing."); Camarillo v. Carrols Corp., 518 F.3d 153 (2d Cir. 2008)(holding that a plaintiff possesses standing to obtain injunctive relief under Title III if he alleges past injury under the ADA; the discriminatory conditions are continuing; and he plausibly intends to return to the place of discrimination); Steger v. Franco, 228 F.3d 889, 892 (8th Cir. 2000)(stating that to establish standing, "a plaintiff need only prove that [he has] knowledge of the barriers and that [he] would visit the building in the imminent future but for those barriers."); Chapman, 631 F.3d at 949-50 (holding that "a plaintiff who is deterred from patronizing a store suffers the ongoing actual

injury of lack of access to the store.").

In <u>Frame v. City of Arlington</u>, 657 F.3d 215 (5th Cir. 2011) the Fifth Circuit endorsed the deterrent-effect approach for use when considering claims pursuant to Title II of the ADA.  The court determined that "imminence is an elastic concept" and a plaintiff "need not engage in futile gestures before seeking an injunction; the individual must show only that [the ADA violation] actually affects his activities in some concrete way."  <u>Id.</u> at 235.  The court found that, in order to support a right to sue, a plaintiff must allege "in detail how specific inaccessible sidewalks negatively affect [his] day-to-day [life]."  <u>Id.</u> at 236.

Thus, "any disabled plaintiff who alleges an intent to return can demonstrate a non-speculative injury sufficient for injunctive relief under the ADA because, if he returned to location, "the same discrimination [would continue to] occur until the facility is made compliant."  <u>Betancourt</u>, 732 F. Supp. 2d at 709.  Therefore, the risk of injury-in-fact "is not speculative if the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant."  <u>Id.</u>

Defendant contends that Plaintiff failed to (1) plead a concrete plan to return to the Subject Premises; (2) provide sufficient factual allegations from which the court could infer his intent to return, and (3) demonstrate that he was deterred from

patronizing.   However,  under  the  deterrent-effect  approach,
Plaintiff need only plead an intent to return to the premises, not
detail a concrete plan.   Plaintiff satisfied this requirement in
his original complaint by stating that he planned "on availing
himself  of  the  benefits  of  the  public  accommodation  once  the
Subject Premises [were] made compliant, [however] until that date
all  attempts  would  be  futile  as  they  would  just  expose  him  to
further  discrimination."[30]   Furthermore,  he  alleged  that,  while
acting as a "tester", he employed a routine practice that concluded
with his return "to the premises to verify its compliance or non-
compliance  with  the  ADA."[31]   As  such,  Plaintiff  not  only  plainly
stated his intent to return, he also provided sufficient factual
allegations from which the court could infer his intent to return.
Finally, Plaintiff indicated that he was "deprived [of] the choice
to freely visit the Subject Premises" and that "[t]he violations
create[d]  a  deterrent,  if  not  a  complete  barrier."[32]   Thus,
Plaintiff has sufficiently pled an intent to return to the Subject
Premises  once  it  is  made  compliant.   Accordingly,  Defendant's
motion to dismiss for lack of subject matter jurisdiction should be
denied.

**B. <u>Statement of Claim</u>**

---

[30]   Doc. 1, Pl.'s Orig. Compl. p. 4; <u>see also</u> <u>id.</u> p. 5.

[31]   <u>Id.</u> p. 4.

[32]   <u>Id.</u> p. 10.

21

Defendant's second argument in support of its motion to dismiss contends that Plaintiff failed to plead sufficient factual allegations to state a claim upon which relief can be granted. Defendant argues that Plaintiff did not provide sufficient details regarding the alleged architectural barriers to provide Defendant with proper notice. Specifically, Plaintiff failed to identify where the noncompliant parking spaces were in the parking lot and how exactly the barriers prevented him from accessing the shopping center. Furthermore, Defendant argues that Plaintiff failed to allege facts establishing his disability, his residence, and the specific date of his visit to the Subject Premises.

In a previous case by Plaintiff against Pinecroft Center, the court found that the "[p]laintiff's complaint fatally fail[ed] to distinguish among and give fair notice to each Defendant of his claims against it." Van Winkle v. Pinecroft Ctr., L.P., No. H-16-2694, 2017 WL 3648477, at *11 (S.D. Tex. Aug. 23, 2017)(unpublished). Unlike Plaintiff's original complaint in Pinecroft, here Plaintiff did indicate which allegations applied to which Defendant within the original complaint. Since initially filing the complaint, the case presently before this court has been narrowed through severance to one defendant. Moreover, the description of the alleged architectural barriers in Plaintiff's complaint are similar in content and style to that of the amended complaint in Pinecroft. Plaintiff provided a list of each alleged

22

violation he encountered and included references to the applicable ADA requirements and brief descriptions of how each alleged violation prevented his access to the premises.  As such, Plaintiff pled sufficient factual allegations to provide Defendant with proper notice.

Plaintiff also pled sufficient factual allegations to draw an inference that Defendant was liable for the alleged misconduct.  As established in the previous sections, Plaintiff need only allege that he is disabled under the ADA, that he personally visited the premises and encountered architectural barriers, and that he had an intent to return to the Subject Premises, but he was deterred from doing so.  Plaintiff met all of these pleading requirements in his initial complaint.

Plaintiff has alleged sufficient factual allegations to meet the requirements to state a claim upon which relief can be granted.  Therefore, Defendant's motion to dismiss for failure to state a claim should be denied.

### V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order

23

2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 3rd day of July, 2018.

_____
U.S. MAGISTRATE JUDGE